DALRYMPLE (WELLS v.). See Case No. 17,392.

---

## Case No. 3,548.

### DALTON v. JENNINGS.

[12 Blatchf. 96; 1 Ban. & A. 256; 5 O. G. 615; Merw. Pat. Inv. 142.] [1]

Circuit Court, S. D. New York. May 21, 1874. [2]

PATENTS—NOVELTY AND INVENTION—"LADIES' HAIR NETS."

1. The claim of the letters patent granted to Joseph Dalton, March 5th, 1872, for an "improvement in ladies' hair nets," namely, "A head or hair net, composed of a main set of meshes fabricated of coarse thread, combined with an auxiliary set or sets of meshes fabricated of fine thread, substantially as described," covers broadly a head or hair net composed of a main set of meshes fabricated of coarse

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission. Merw. Pat. Inv. 142, contains only a partial report.]
2 [Affirmed in Dalton v. Jennings, 93 U. S. 271.]

thread, combined with an auxiliary set or sets of meshes fabricated of fine thread, without reference to the degree of fineness of the finer threads, and without reference to the manner of tying the finer threads to the coarse threads.

2. The patented net, arrived at by taking a net of large squares made by large threads, and filling up partially the large squares by crossings of finer threads, is not a different net from one made by taking a net of small squares, sufficiently small to keep short hairs from protruding, such small squares being formed by fine threads, and all the threads of the net being of uniform size, and substituting for each alternate .fine thread, in both directions, a coarse thread, so as to arrive at a net like the patented net.

3. Such a head or hair net, of small squares, sufficiently small to keep short hairs from protruding, such small squares being formed by threads which were so small as to be entitled to be called fine threads, and were, at a certain and reasonable distance away, invisible, all the threads of the net being of uniform size, existed prior to the invention of Dalton; and, to substitute in it, for each alternate fine thread, in both directions, a coarse thread, and so produce the net of Dalton, does not produce a new article of manufacture, capable of sustaining a patent.

[See note at end of case.]

[This was a bill in equity by Joseph Dalton against Abraham G. Jennings to restrain infringement of letters patent No. 124,340, granted to complainant March 5, 1872.]

John Van Santvoord, for plaintiff.

Arthur v. Briesen, for defendant. .

BLATCHFORD, District Judge. This suit is brought on letters patent [No. 124,340] granted to the plaintiff, March 5th, 1872, for an "improvement in ladies' hair nets." The specification says: "This invention relates to a net composed of two or more sets of meshes, each formed from different sized threads, they being combined in a manner too fully described hereafter to need preliminary description. In the drawing, the letter A designates a hair net, which is composed of meshes, a, b, formed from different sized threads. The meshes, a, are formed of coarse threads, and they are of considerable width, so that a net formed of these meshes alone, when placed on the head, would permit the short hair to protrude through it, and it is, therefore, desirable to partially fill up these meshes by the secondary meshes, b. These secondary meshes are, by preference, made of very fine silk threads, so that the same are invisible when the net is worn, and at the same time, by these secondary meshes, the hairs are effectually held down. The meshes, b, (when an auxiliary set is used,) are attached to the meshes, a, in the middle of their bars; and, when two or more sets are introduced, they are placed equidistant, or nearly so; and the two sets of meshes—that is, the main set, a, and auxiliary set or sets, b,—are so formed and connected with each other that either set can be entirely broken away without destroying the other. If the fine meshes, or any of the same, are torn, therefore, each torn mesh

can be cut out without destroying the main fabric. The meshes a, as well as the meshes b, are, by preference, made of double strands, which pass through each other, as shown in Fig. 2, they being fabricated in a manner well known to lace manufacturers; but I do not confine myself to the precise method of forming the meshes. They may, in some cases, be composed of three or more strands, united by tying, in any manner, at the ties, and of varying qualities and color of thread. The auxiliary meshes, when more than one set is used, may be arranged at acute angles to the main meshes, and may, of preference, be grouped together." The claim is, "A head or hair net, composed of a main set of meshes, fabricated of coarse thread, combined with an auxiliary set or sets of meshes, fabricated of fine thread, substantially as described." There are six figures of drawings. Fig. 1 is a top or plane view of the patented net, and Fig. 2 an enlarged view of a few meshes of it, showing the manner in which the net is formed. Fig. 1 shows squares, the outer edges of which are of large thread, and within each one of those squares are four squares equal in size to each other, formed by the running of small threads parallel with the large threads, there being one small thread equidistant between every two of the large threads. Fig. 3 shows a like construction, with two small threads in the space between every two of the large threads, and dividing equally such space. Fig. 4 shows a like construction with three small threads in the space between every two of the large threads, and dividing equally such space. Fig. 5 shows a like construction with four small threads in the space between every two of the large threads, and dividing equally such space. Fig. 6 shows squares, the outer edges of which are of large thread, and two small threads crossing each other in each of such squares, but running through opposite corners of such squares.

It is very evident, that the inventor starts with a net formed of large squares by large threads, and then proceeds to partially fill up the large squares by crossing the large squares with finer threads. The idea of the finer threads is to keep short hairs from protruding through the large squares, and he says he prefers to have the finer threads so fine as to be invisible. The tenor of the specification and claim shows that the intention was to have the claim cover broadly a head or hair net composed of a main set of meshes fabricated of coarse thread, combined with an auxiliary set or sets of meshes fabricated of fine thread, without reference to the degree of fineness of the finer threads, and without reference to the manner of tying the finer threads to the coarse threads. The history of the steps which led to the making by the inventor of the net described in the patent, shows that he started with a net of large squares, made by large threads, and filled up partially the large squares by crossings of finer threads. But the net thus arrived at was not a different net from what would have resulted if he had taken a net of small squares, sufficiently small to keep short hairs from protruding, such small squares being formed by fine threads, and all the threads of the net being of uniform size, and had substituted for each alternate fine thread, in both directions, a coarse thread, so as to arrive at a net like the patented net. Now, such a head or hair net, of small squares, sufficiently small to keep short hairs from protruding, such small squares being formed by threads which were so small as to be entitled to be called fine threads, and were, at a certain and reasonable distance away, invisible, all the threads of the net being of uniform size, existed prior to the plaintiff's invention. It is defendant's Exhibit No. 10. In such a net, to substitute for each alternate fine thread, in both directions, a coarse thread, cannot be the production of a new article of manufacture. Such substitution produces the patented net. It may be new, as a design, and may be entitled to be patented as a design. But it is not a new article of manufacture. The specification sets forth, as the advantages of the patented net, only the preventing of the protruding of short hairs, and the invisibility of the fine threads. But any person had a right to make defendant's Exhibit No. 10, of as fine threads as should be desirable, and to make it of uniform finer threads or of uniform coarser threads would involve no invention. As it stands, it will prevent short hairs from protruding. The substitution of alternate coarse threads in it for the fine threads has no effect, one way or the other, on the protruding of short hairs, or on the invisibility of the fine threads. No point of advantage, as between the patented net and defendant's Exhibit No. 10, is or can be suggested, except as to mere ornament or taste or outline, in pleasing the eye. The fabrics, as to utility, structure, inherent qualities, and mode of operation in use, are the same. The patented net, in view of the former net, has no patentability, if the claim of the patent is to be construed in the broad manner before suggested.

If the claim, to sustain it in view of the former net, is to be limited to a claim to the combination of the two sets of threads when they are so connected with each other that either set can be entirely broken away without destroying the other, then the defendant has not infringed. The defendant's net, although it has a series of finer threads crossing each other between the coarse threads, so as to prevent short hairs from protruding, does not have its threads so connected that either set can be entirely broken away without destroying the other.

The bill must be dismissed, with costs.

[NOTE. The complainant appealed to the supreme court, where the decree herein was af-

firmed; the court holding, per Mr. Justice Miller, that "the patent of John Dalton for 'a head or hair net composed of a main set of meshes fabricated of coarse thread, combined with an auxiliary set or sets of meshes fabricated of fine thread.' is void because there is no invention in it, and because various fabrics had been made and were in public use for a long time before his application. which are precisely and accurately described by Dalton in the specification and claim of his patent." Dalton v. Jennings, 93 U. S. 271.]